MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v.
J. A. HAMMER, NEXT FRIEND.

Decided January 23, 1904.

**1.—Railroads—Duty of Lookout for Children on Track.**

In an action against a railroad company for injury to a child 20 months old, struck by a train while wandering on the track, it was not error for the court to charge that it is the duty of the agents and servants of a railroad company to use ordinary care to discover infants of tender years who may be on or near the track in front of the train, by keeping a reasonable lookout for that purpose; and objection to the charge on the ground that the child was a trespasser and no duty arose in relation to it unless its danger was known or should have been anticipated, was not tenable.

**2.—Same—Keeping Lookout—Negligence Per Se.**

As there was no other way to use ordinary care in this instance except by keeping a lookout, and as it was the duty of those in charge of the train to keep such lookout, the failure to do so was negligence per se, and the court did not err in so charging.

**3.—Same—Degree of Care—Charge.**

A charge that the degree of care in keeping a lookout would "vary as the known probabilities of danger may vary along different portions of the road on which the train is being run," might have been omitted, but was not calculated to injure the defendant, and does not convey the idea that the care to be used is other than ordinary care.

**4.—Same—Negligence—Place Not at Crossing.**

The court properly refused a requested charge which excluded from the consideration of the jury the issue of negligence as to keeping a proper lookout and confined them to the issue of discovered peril. Defendant was liable if its train operatives failed to use ordinary care to discover the child on the track, though it was at a place where one would not ordinarily be expected and was not at a crossing.

**5.—Same—Discovered Peril.**

It was not error for the court to charge that it is the duty of those in charge of a railroad train, when they discover an infant of tender years upon or near the track in front of the train, to immediately resort to all the means at their command to stop the train before it reaches the child, the court having instructed elsewhere in the charge that such operatives were required to use ordinary care and effort to stop the train by the use of the means at their command. Because of the child's tender years, no presumption arose that she would leave the track before the train reached her.

Appeal from the District Court of Ellis. Tried below before Hon. J. E. Dillard.

*T. S. Miller* and *G. C. Groce,* for appellant.

*Finley & Knight* and *Love, Gammon & Wimbish,* for appellee.

RAINEY, CHIEF JUSTICE.—J. A. Hammer brought this suit as next friend for the use and benefit of his child, Mary Hammer, against appellant to recover damages on account of personal injuries inflicted upon her through the negligence of appellant's servants. The company answered by general denial. A trial resulted in favor of plaintiff.

The evidence shows that plaintiff with his family lives on his farm situated upon the line of appellant's railway, the residence being 75 or 100 yards from the track, and the yard extending to the right of way

and within sixty feet of the track. The right of way was inclosed by a wire fence, the first wire being about six inches from the ground, the next being ten or twelve inches, and so on. Opposite the house there was a private crossing, and a path leading from the yard gate to said crossing. Along the right of way it was grown up in weeds, thistles, etc. Between the rails south there was a smooth path or walkway. At this point the track runs north and south, is practically straight and level, without obstruction to view for a considerable distance both ways.

On May 31, 1900, J. A. Hammer and wife went to a neighboring town, Waxahachie, leaving at home their seven children, ranging in ages from 17 years down to about 20 months. The youngest, Mary, being left in charge of her older sister and brothers, strayed upon the track to a point 75 or 100 yards south of the crossing, where she was struck and injured by an engine pulling freight cars, which was being operated by appellant's servants. Prior to this the engineer had seen the children playing on the right of way near the crossing, and saw that they had a little play railroad constructed there. There is no positive evidence as to how long the child had been upon the track when struck, nor where she first went upon it, but it is sufficient to warrant the conclusion that if the operatives had used ordinary care in keeping a lookout the child could have been seen by them in time to have prevented the injury. The evidence is also sufficient to warrant the amount of damages assessed by the verdict.

On the issue as to the duty imposed upon railroads the court charged the jury as follows: "It is the duty of the agents, servants and employes of a railroad company engaged in running and operating its trains to use ordinary care to discover infants of tender years who may be on or near the track in front of the train, by keeping a reasonable lookout for that purpose, the degree of such care being such as a person of ordinary prudence would commonly exercise under like circumstances, and varying as the known probabilities of danger may vary along different portions of the road on which said train is being run."

It is urged that this charge is erroneous in that an affirmative duty of keeping a lookout was placed upon appellant to prevent injuring the child, the contention being that, the child being a trespasser, no duty arose in relation to it, unless its danger was known or should have been anticipated.

The doctrine that a railroad owes no duty to one wrongfully on its track, except to refrain from wanton injury to him, has been expressly repudiated by the Supreme Court of this State; not only so, but it has held that it is the duty of carriers to keept a lookout for anyone who may be on the track. Railway Co. v. Simpkins, 54 Texas, 516; Railway Co. v. Hewitt, 67 Texas, 479; Railway Co. v. Watkins, 88 Texas, 20.

In the Watkins case cited the court uses this language: "The true rule is that it is the duty of the servants of the railway company operating its trains to use reasonable care and caution to discover persons on its track, and a failure to use such care and caution is negligence on the

part of such company, for which it is liable in damages for an injury resulting from such negligence, unless such liability is defeated by the contributory negligence of the person injured or of the person seeking to recover for such injury, and the circumstances under which the party went upon the track are merely evidence upon the issue of contributory negligence. If such circumstances show that the party injured was a wrongdoer or trespasser at the time of the injury, the issue of contributory negligence is, as a general rule, established as a matter of law, but not so in all cases." But it is contended that this language was used in a case where the facts show that the accident happened at a point where the presence of a person should have been anticipated, and that it should only apply to such a state of facts. We think, however, that in its use the able judge intended it to have a general application to the operation of trains. The proposition was there made that as the injured party was a trespasser or a mere licensee, the railroad owed her no duty to keep a lookout to discover her or give her any notice of the approach of the engine. In discussing this proposition the court quoted from the Simpkins and Hewitt cases, supra, to the effect that a lookout must be kept, then announced the rule above stated, and then added: "It results from the above, that it was the duty of the railroad to use ordinary or reasonable care to discover and warn defendant in error, whether she be considered a trespasser or a mere licensee, and a failure to use such care was negligence," etc. This, to our mind, shows that the court had in mind the distinction as to the duty owing a trespasser and one not such, and indicates that the measure of duty is ordinary care to discover a person on the track. That the railroad company must use ordinary care to prevent injury to an infant of tender years on the track, we think is well settled. We can conceive of no way that a discovery could be made except by keeping a lookout.

It is also urged that neither the common law nor statute imposes such a duty, and in the absence of such requirement it was error to so charge, but was a question for the jury. Unless an act is per se negligence, it is error for the court to so charge, but should submit it to the jury to determine. In another paragraph of the charge the court, in applying the law to the facts, left it to the jury whether the employes used ordinary care to discover the infant on the track "by keeping a lookout." There was no other way to use ordinary care in this instance, and the law being, as held by the foregoing decision, that it was the duty to keep a lookout, the failure to do so was negligence per se, and it was not error for the court to so instruct the jury.

It is further urged that the court erred in stating that the "degree of care" would "vary as the known probabilities of danger may vary along different portions of the road," etc., the contention being that the "degree of care" due in a given case does not vary, though the amount of diligence or vigilance might vary with varying probabilities of danger.

We see no error in the charge in this respect. It does not convey the idea that the care to be used is other than ordinary care, and the only

reasonable construction of which it is susceptible is that the amount or quantum of diligence varies under different conditions. It is a little difficult for the ordinary mind to distinguish the difference, if any, between the expressions "degree of care" and "amount of diligence" when used in this connection. While this part of the charge might have been omitted, we are unable to see that it was in the least calculated to injure appellant. Aside from this the charge has been approved in Railway Co. v. Phillips, 37 S. W. Rep., 621, and Railway Co. v. Harvin, 54 S. W. Rep., 629, and writs of error denied in both cases.

The appellant complains of the action of the court in refusing to give the following requested charge, viz: "Defendant requests the court to instruct the jury that if the evidence shows that Mary Hammer went upon its track at a time and place when and where its employes in charge of its train in the exercise of that degree of care usually and ordinarily exercised in the operation of railway trains by persons of ordinary care, prudence and caution, had no reason to anticipate her presence on the track, and if after discovery of the presence of the said Mary Hammer on or dangerously near its track, the employes of defendant in charge of its train promptly made use of the appliances at hand to stop said train, and used all efforts in their power so to do before said Mary Hammer was struck, then the law is for the defendant and you will so find."

If, as contended by appellant, no duty of lookout along its track was imposed upon the railroad company, except at crossings, or where its track was commonly used by pedestrians, then this instruction should have been given, but as heretofore stated, this court does not concur in appellant's contention. The requested charge excludes from the consideration of the jury the issue of negligence as to the keeping of a proper lookout, and confines, in effect, the jury's consideration to the issue of discovered peril, and on the issue of discovered peril the court's charge is substantially as the one requested. The plaintiff, among other grounds of negligence, alleged the failure to keep a proper lookout, and the court only submitted that ground and that of discovered peril. If the duty to keep a lookout to discover the infant devolved upon the railway company, then the question of anticipated danger as applied to crossings and places along the track which pedestrians commonly use had no application. It is insisted that a lookout is not enjoined except at such places, and numerous cases are cited that discuss the amount of care to be used where injury is inflicted at such places by the operatives of trains, but in none of them, as we understand it, is the doctrine that a duty to keep a lookout to discover persons along other portions of the track excluded. Whenever the courts of this State have been called upon to pass upon the question where the question of contributory negligence was eliminated, they have uniformly held that the railway company was liable if the operators of the train failed to use ordinary care to discover the party on the track, though it was at a place where one would not ordinarily be expected. Railway Co. v. Simpkins, 54 Texas, 615; Rail-

way Co. v. O'Donnell, 58 Texas, 42; Railway Co. v. Vaughn, 5 Texas Civ. App., 195, 23 S. W. Rep., 745.

Another error assigned is that the court did not correctly charge the law on discovered peril. The charge is as follows: "It is the duty of the agents, servants and employes of a railway company, when they discover an infant of tender years upon or near its track, in front of its train, immediately thereafter to resort to all the means at their command to stop the engine and train before it reaches such infant."

While this charge is not strictly correct, yet in view of the evidence and that portion of the court's charge where the law was applied to the facts, no injury could have resulted therefrom. The court, in the charge above quoted, was stating the law abstractly; but when applying it to the facts, charged that "if the jury should believe from the evidence before them that the agents, servants or employes of defendant in charge of its said train, after they discovered that plaintiff was on or near its track, if they did, could have stopped said engine and train by the exercise of ordinary care and effort by the use of the means at their command before it reached plaintiff, and they failed to exercise ordinary care and effort to stop said engine and train before it reached plaintiff by the use of the means at their command, and that they were thereby guilty of negligence as the same has been heretofore defined in these instructions, and that such negligence was the direct or proximate cause of plaintiff's injury, if she was injured, then the jury should find for plaintiff," etc. The charge on this issue, when taken in its entirety, could not have been misleading. The court tells the jury before plaintiff can recover they must believe that after the infant was discovered the operatives could have, by the exercise of ordinary care by the use of the means at their hands, stopped the train before reaching her. The plaintiff being of such tender years, no presumption could arise that she would leave the track before the train would reach her, as in a case of one of more mature years, so the duty devolved upon the operatives, as soon as discovered, to stop the train before reaching her, if it could have been done by the exercise of the highest degree of care; that is, the operatives should have used every reasonable means at hand to avert striking her. Railway Co. v. Matula, 79 Texas, 583; Railway Co. v. Wallace, 21 Texas Civ. App., 394, 53 S. W. Rep., 77; Railway Co. v. Bowen, 95 Texas, 366.

We are of the opinion that there is no reversible error in the record, and the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

The appellant, on motion for rehearing, complains of our finding in reference to the engineer prior to the accident having seen children playing on the right of way "near the crossing" and saw they had a little play railroad constructed there. The complaint is that the evidence does-

no., show that it was *near the crossing*. The only testimony on this point is that of the locomotive engineer, who was operating the engine at that time. While he did not use the expression *"near the crossing,"* his testimony, to be exact, was "during the time he had been on the road he had seen children playing on the right of way. They had a railroad track on the side built of wood and played there sometimes. Didn't know that he had ever seen them on the track, but had seen them on the right of way."

On cross-examination he stated, "He might have seen children playing along the track on the trip before; he knew that Hammer's house was there, and also the crossing, and that he had seen children playing there." This evidence is given to show the basis of our conclusion, and which we think supports it:

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.